

**Signed and Filed: October 22, 2010**

_____
**THOMAS E. CARLSON
U.S. Bankruptcy Judge**
_____

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 08-30989 TEC |
| SAND HILL CAPITAL PARTNERS III, LLC, a California limited liability company, | Chapter 7 |
| Debtor. | |
| JANINA M. ELDER, Trustee in Bankruptcy, Sand Hill Capital Partners III, LLC, | Adv. Proc. No. 10-3089 |
| Plaintiff, | |
| vs. | |
| WILLIAM GREER, aka Bill Greer; and POWER PLAY GREER - LIVE OAK, LLC, | |
| Defendants. | |
| JANINA M. ELDER, Trustee in Bankruptcy, Sand Hill Capital Partners III, LLC, | Adv. Proc. No 10-3091 TC |
| Plaintiff, | |
| vs. | **MEMORANDUM DECISION RE DEFENDANTS' RULE 12(b)(6) MOTIONS TO DISMISS** |
| POWER PLAY REAL ESTATE FUND, L.P.; POWER PLAY ESTATE MANAGEMENT, LLC; STEWART CAPITAL GROUP, LLC; SAND HILL VENTURE DEBT III, LLC; SAND HILL VENTURE DEBT, LLC; and CORE HOMES, LLC, | |
| Defendants. | |

On October 8, 2010, the court held a hearing on Defendants' Rule 12(b)(6) Motions to Dismiss. G. Larry Engel appeared for Defendants. W. George Wailes appeared for Plaintiff. Upon due consideration, and for the reasons stated below, the court determines that the Motions should be granted in part and denied in part.

I. California UFTA Claims (intentional fraudulent transfers § 544; § 3439.04(a)(1); constructively fraudulent transfers, § 544; § 3439.04(a)(2); § 3439.05).

The complaints allege the transfer dates, the amounts transferred, the method of transfer (e.g, wire), the name of the transferee, that Debtor was insolvent at the time of the transfers, and that Debtor received no value in exchange for the transfers. The complaints further allege that Debtor operated a Ponzi scheme from 2003 until the June 5, 2008 petition date; that the Ponzi scheme attracted large sums of money that was not used to invest in other entities on behalf of Debtor; and that the investors' money was used for Del Biaggio's personal benefit, to pay prior investors, and in furtherance of the Ponzi scheme.

Ponzi scheme allegations establish under the California Uniform Fraudulent Transfer Act: (1) an actual intent to defraud (3439.04(a)(1)), and (2) that the Ponzi scheme operator was engaged or about to engage in a transaction for which the remaining assets of Debtor were unreasonably small in relation to the transaction. (3439.04(a)(2)). See Donnell v. Kowell, 533 F.3d 762, 770-71 (9th Cir. 2009). The complaints state a claim under § 3439.05 upon which relief can be granted, because they allege Debtor was insolvent when transfers were made, and that no value received in exchange for transfers.

II. Intentional and Constructively Fraudulent Transfers, §§ 548(a)(1)(A), (B)

Pursuant to section 548(a)(1)(A), the complaints state an a claim for intentional fraudulent transfer upon which relief can be granted. See In re Cohen, 199 B.R. 709 (9th Cir. BAP 1996) (proof of Ponzi scheme is sufficient to establish Ponzi scheme operator's actual intent to hinder, delay, or defraud creditors for purposes of actually fraudulent transfers under section 548(a)(1)). Assuming, *arguendo*, that In re Image Masters, Inc., 421 B.R. 164 (Bankr. E.D. Pa. 2009) is binding precedent, it does not support dismissal of the federal intentional fraudulent transfer claims, because the complaint at issue in Image Masters established on its face that Defendants received reasonably equivalent value in exchange for the transfers and that Defendants acted in good faith.

The complaints state a claim for relief for constructively fraudulent transfer for the reasons set forth in Donnell v. Kowell.

With respect to the November 12, 2005 transfer, the Greer/Power Play complaint fails to state a claim for intentional or constructively fraudulent transfer under section 548, because the transfer occurred more than two years before the June 5, 2008 petition date. The section 548 claims to recover this transfer are dismissed without leave to amend, because the claim is time barred under section 548(a)(1).

III. Insider Preference Claims

The Greer/Power Play complaint contains only bald allegations that Defendants were "insiders". These allegations are insufficient to state a claim upon which relief can be granted, because they are too conclusory. Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

-3-

The complaint would need to allege that Defendants had a formal legal relationship with Debtor (such as an affiliate) or a sufficiently close relationship with Debtor that its conduct should be subject to closer scrutiny than someone dealing with Debtor at arms length. <u>In re Lull</u>, 2008 WL 3895561 (Bankr. D. Hawai'i) (King, J).

The Power Play/Stewart Capital Group complaint alleges insider preference claims only against two of the defendants: PPREM and PPREF. That complaint states an adequate insider preference claim as to these two defendants, because it alleges that Del Biaggio at all relevant times was the managing member of Debtor and controlled Debtor, and that Debtor was the managing member of PPREM, which in turn was the managing member of PPREF. These allegations state a claim that PPREM and PPREF were statutory insiders of Debtor or had a sufficiently close relationship with Debtor that their conduct should be subject to closer scrutiny than someone dealing with Debtor at arms length. 11 U.S.C. § 101 (31)(B)(iii), (vi).

IV. Claims for Breach of Contract; Breach of the Implied of Good Faith and Fair Dealing; and for Turnover.

The complaints contain wholly conclusory allegations regarding Defendants' alleged breach of contract, breach of the covenant of good faith and fair dealing, and turnover. Conclusory allegations that merely recite the elements of a claim are insufficient to state a claim upon which relief may be granted. <u>Twombly</u>, 127 S.Ct. at 1965.

V. Account Stated

The complaints allege in conclusory fashion that, during the four years prepetition, an account was stated in writing between

Debtor and Defendants and that no amount has been repaid despite demand for payment. The complaints fail to state a claim for account stated upon which relief can be granted, because they do not allege an agreement, based on prior transactions between Plaintiff and Defendant, that the items of an account were true and that "the balance struck [was] due and owing." Maggio, Inc. v. Neal, 196 Cal. App. 3d 745, 752-53 (Ct. App. 1987). 'To be an account stated, it must appear that at the time of the statement an indebtedness from one party to the other existed, that a balance was then struck and agreed to be the correct sum owing from the debtor to the creditor, and that the debtor expressly or impliedly promised to pay the creditor the amount thus determined to be owing." Id. (citation omitted).

VI. Accounting

The complaints fail to state a claim for accounting, because they do not allege the existence of a fiduciary relationship between Debtor and Defendants,[1] or that the transactions were so complicated as to required an accounting to determine the financial status of the parties with respect to each other. 5 Witkin Cal. Proc. Pleading § 819, p. 236; Civic Western Corp. v. Zila Industries, Inc., 66 Cal. App. 3d 1 (1977); St. James Church v. Sup. Ct., 135 Cal. App. 2d 352, 359 (1955) (accounting normally

---

[1] The Power Play/Stewart Capital complaint alleges that Plaintiff was the managing member of PPREM, which was the managing member of PPREF. The parties did not argue, and the court does not at this time decide, the effect this legal relationship may have on an action against these defendants for an accounting. See Witkin, 5 Cal. Proc., Pleading § 821(c)(3), p. 238 (5th Ed) ("Because a partner has access to the partnership books, he or she cannot require an accounting from copartners except under unusual circumstances.")

appropriate when plaintiff seeks to recover an amount that is unliquidated and unascertained, and that cannot be determined without an accounting).

VII. Defenses to "Non Core" Causes of Action (Unclean Hands; In Pari Delicto; Laches)

If the complaints are amended to allege legally sufficient Non-Core Claims (as defined in the Motions to Dismiss)[2], such claims are not barred by the defenses of unclean hands or laches, because prejudice or injury to Defendants is a fact issue that cannot be decided in the 12(b)(6) context. Nor would the defense of *in pari delicto* necessarily bar the trustee's Non Core Claims. It is conceivable that the amended complaints would allege facts that establish the "adverse interest exception" to *in pari delicto*, i.e. that Del Biaggio was acting for his own interest and not that of the LLC, in which case Del Biaggio's fraud would not be imputed to Debtor (or the trustee, standing in the shoes of Debtor). <u>In re Crown Vantage, Inc.</u>, 2003 WL 25257821 (N.D. Cal).

VIII. Leave to Amend

Leave to amend is granted regarding all dismissed claims, except the section 548 claims seeking to avoid the November 12, 2005 transfer. In light of the parties' settlement efforts, the time for Plaintiff to file and serve the amended complaints and for Defendants to file and serve responses to the amended complaints is extended until entry of a separate order by this court.

**\*\*END OF MEMORANDUM\*\***

---

[2] Defendants define the Non Core causes of action as the claims for accounting, breach of contract, breach of the implied covenant of good faith and fair dealing, account stated, and turnover.